UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| TOMMY WAYNE WILKERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 1:20-CV-275-TAV-CHS |
| | ) |
| RN ALLEN JENNINGS, | ) |
| LPN BRITTANY SMITH-HILL, | ) |
| LPN CAROLYN DUNN, | ) |
| SGT. FOREST BLACKBURN, | ) |
| DR. ELLIS, and | ) |
| NURSE JESSICA, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

The Court is in receipt of a pro se prisoner's complaint for violation of 42 U.S.C. § 1983 [Doc. 2], and a motion seeking leave to proceed *in forma pauperis* [Doc. 1].

### I. MOTION TO PROCEED *IN FORMA PAUPERIS*

It appears from Plaintiff's motion that he lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 1] will be **GRANTED**.

Because Plaintiff is an inmate in the Coffee County Jail, he will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, as an initial partial payment, the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or

(b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1915(b)(2) and 1914(a).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, and to the Attorney General for the State of Tennessee. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution. The Clerk also will be **DIRECTED** to provide a copy to the Court's financial deputy.

## II. SCREENING

### A. ALLEGATIONS OF COMPLAINT

Plaintiff, who has had a previous colon surgery, has been a chronic care inmate since December 2016 [Doc. 2 p. 7, 16]. On or about June 11, 2020, he underwent a colonoscopy performed by a "free world" physician [*Id.* at 9, 11-16]. The recommendations by that physician were that a colonoscopy be performed every five years "or sooner if abdominal pain, lower GI bleeding, anemia, weight loss, change in bowel habits or stool caliber, or

recurrent abdominal pain occur" [*Id.* at 16]. At all times relevant to the constitutional violations alleged below, Plaintiff was incarcerated in the Coffee County Jail.

During the evening of July 13, 2020, Plaintiff submitted a request for medical attention ("sick call request") due to difficulty having a bowel movement [*Id.* at 3-4]. A nurse placed him on Miralax, which did not alleviate his symptoms [*Id.* at 4]. Plaintiff verbally complained to several nurses about "stomach pains and not being able to hold anything down" [*Id.*]. He submitted another sick call request on July 27, 2020, which resulted in no evaluation or treatment [*Id.*]. Thereafter, he submitted another sick call request relating to his stomach issues on August 3, 2020, after which he was evaluated by Defendant LPN Brittany Smith-Hill, who stated she would place him under observation [*Id.*].

Plaintiff was placed in an observation cell on August 4, 2020 [*Id.*]. On August 6, 2020, he was summoned to the Jail Administrator's office and was advised that Defendant Sgt. Forrest Blackburn reported witnessing Plaintiff punching himself, sticking his finger down his throat, and drinking excessive amounts of water in an attempt to make himself vomit [*Id.* at 4-5]. Plaintiff maintains that there is no truth to the allegations made by Sgt. Blackburn [*Id.* at 5].

The following day, on August 7, 2020, Defendant Nurse Jessica was passing out medications when Plaintiff approached her to ask a question about his stomach issues [*Id.* at 6]. Plaintiff was advised by Defendant Blackburn "that they don't have time for this" [*Id.*].

3

Case 1:20-cv-00275-TAV-CHS   Document 4   Filed 10/21/20   Page 3 of 14   PageID #: 29

During medication pass on August 9, 2020, Plaintiff was standing outside of his cell waiting for his medications when Defendant LPN Carolyn Dunn asked "why is [Plaintiff] out of his cell?" [*Id*. at 5]. Several officers attempted to explain the situation to Defendant Dunn, who became increasingly upset and loud [*Id*.]. Defendant Dunn complained to her supervisor, Defendant RN Allen Jennings, that Plaintiff threatened her [*Id*.]. Plaintiff contends that he never threatened Defendant Dunn, and that the other correctional officers witnessed the incident [*Id*.].

Defendants Jennings and Blackburn approached the Jail Administrator with Defendant Dunn's allegations, and as a result, Plaintiff must either remain in his cell or submit to five-point restraints during medication pass [*Id*. at 6-7].

On September 1, 2020, blood work was ordered, and on September 8, 2020, Plaintiff was summoned to the medical clinic where he spoke with Defendant Dr. Ellis and was advised that more blood work was needed due to Plaintiff's elevated liver enzymes [*Id*. at 7]. On September 9, 2020, additional blood was drawn to test Plaintiff for Hepatitis [*Id*.]. On September 14, 2020, Plaintiff was removed from his cell by officers and was advised that he had tested positive for Hepatitis B [*Id*. at 7-8]. The next day, on September 15, 2020, Plaintiff went to the medical clinic and spoke with Dr. Ellis, who confirmed that Plaintiff tested positive for Hepatitis B [*Id*.]. Dr. Ellis "insinuated" that Plaintiff contracted Hepatitis B through sexual intercourse or tattooing [*Id*. at 8]. Plaintiff denies that either is the source of the disease, and that he more likely contracted it through his job as a jail barber or through unsanitary food distribution practices [*Id*.].

Plaintiff was advised that Hepatitis B is treatable, and more blood work was obtained on September 16, 2020 [*Id*.]. No treatment was started, however, and Plaintiff filed the instant suit on or about September 17, 2020, seeking damages for the distress caused by Defendants' actions [*See id*. at 10].

### B. SCREENING STANDARD

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim, however. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and

5

conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### C. ANALYSIS

#### 1. False Allegations

Plaintiff has alleged that Defendants Dunn and Blackburn fabricated allegations against him that were endorsed by Defendant Jennings, and which resulted in him being physically restrained during medication pass, causing him humiliation, physical stress, and mental anguish [Doc. 2 p. 5]. He also worries that their hostility toward him might cause one or more of these Defendants to give him the wrong medication.

As a preliminary matter, the Court notes that inmates possess no right to be free from charges or convictions of prison disciplinary offenses. *Wolff v. McDonnel*, 418 U.S. 539, 564-71 (1974). This is true even if the charge later turns out to be unfounded. *Cromer v. Dominguez,* 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98–

6

Case 1:20-cv-00275-TAV-CHS   Document 4   Filed 10/21/20   Page 6 of 14   PageID #: 32

5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitution a constitutional violation redressable under § 1983."). Here, Plaintiff did not even receive a disciplinary charge based on the allegedly false fabrications against him; rather, he merely has to remain in his cell or submit to restraints in order to receive his medications. Therefore, the Court finds Plaintiff's allegation that Defendants fabricated allegations against him fails to state a due process claim.

Next, the Court finds that Defendants' allegedly hostile behavior toward him fails to state a claim upon which relief may be granted under § 1983, as verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Thus, Plaintiff's allegations that Defendants have harassed and humiliated him, although reflective of unprofessional conduct, do not rise to a deprivation of constitutional dimensions. *See Ivey*, 832 F.2d at 954-55.

Moreover, to recover damages under the PLRA, it is not enough to establish a constitutional violation. A prisoner must also establish a "physical injury," meaning an injury that is more than *de minimis*." *Pierre v. Padgett*, No. 18-12276, 2020 WL 1650656, at *4 (11th Cir. Apr. 3, 2020); *see also* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical

7

injury[.]"). Plaintiff has not alleged any physical injury as a result of Defendants' alleged fabricated allegations, and therefore, he cannot recover monetary damages for their conduct. Accordingly, this claim will be **DISMISSED**.

### 2. Excessive Force

Next, the Court considers whether Defendants have subjected him to excessive force by requiring him to submit to five-point restraints if he wishes to remain outside of his cell during medication pass. In determining whether a prison official has violated the Eighth Amendment's prohibition against excessive force, courts apply a two-part inquiry: (1) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm," i.e. the subjective component; and (2) whether the conduct, in context, is sufficient serious to offend "contemporary standards of decency," i.e., the objective component. *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992). Even if the Court were to assume that Defendants have maliciously fabricated evidence to require that Plaintiff be restrained, the Court objectively finds that requiring Plaintiff to either remain in his cell or submit to restraints during a designated period does not offend contemporary understandings of decency towards prisoners. Moreover, Plaintiff seeks monetary damages for the mental distress caused by Defendants' actions, but he has not alleged that he has been in any way physically injured by the restraints. Accordingly, Plaintiff's allegations of excessive force will be **DISMISSED**. *See, e.g.*, 42 U.S.C. § 1997e(e).

### 3. Equal Protection

Plaintiff also alleges that he is "the only inmate throughout th[e] entire facility" that has to be shackled during medication pass [Doc. 2 p. 6-7]. Therefore, the Court will consider whether he has stated a constitutional claim for the denial of equal protection.

The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. In order to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

This Court has already determined that requiring a prisoner to remain in his cell or submit to restraints does not burden a fundamental right. Moreover, Plaintiff does not allege that he is the only black male in the facility, and that he is restrained because of his race, but rather, that he is the only inmate in the facility restrained at all. Therefore, he has not alleged that Defendants are targeting a suspect class by requiring him to submit to restraints. Finally, the Court cannot find that the policy has no rational basis. An allegation was made that Plaintiff threatened facility personnel, and requiring Plaintiff to either remain in his cell or submit to restraints when those personnel are present does not lack a rational basis. Therefore, Plaintiff's allegations fail to state an equal protection claim. *See*

9

*Iqbal*, 556 U.S. at 678 (holding conclusory allegations fail to state a constitutional claim). Further, Plaintiff seeks monetary damages for the mental distress caused by Defendants' actions, but he has not alleged that he has been in any way physically injured by the conduct. Accordingly, this claim will be **DISMISSED**. *See, e.g.*, 42 U.S.C. § 1997e(e).

### 4. Retaliation

Out of an abundance of caution, the Court will construe Plaintiff's complaint to allege a retaliation claim against Defendants Dunn, Blackburn, and Jennings.

To establish a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The Court finds that Plaintiff has a protected right to file sick call requests. However, Plaintiff has not alleged that he was subjected to discipline or denied medical treatment because he had filed sick call requests.
A Plaintiff's subjective belief that he has been retaliated against is insufficient to state a claim. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997). Accordingly, the Court finds any allegations of Defendants' retaliatory motives insufficient to state a claim under § 1983. *See, e.g., Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987). This claim will be **DISMISSED**.

10

### 5. Medical Care

Finally, the Court considers Plaintiff's claim that he was denied medical care. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). It is well settled, however, that the Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Rather, a prisoner claiming the deprivation of adequate medical care must meet both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). That is, Plaintiff must allege that (1) the medical need is sufficiently serious (the objective component) by demonstrating that he is incarcerated under conditions posing a substantial risk of harm; and (2) the official acted with "deliberate indifference" (the subjective component) in that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 834-837.

Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). Therefore, to establish an official's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Rather, to state a constitutional claim, a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001); *see also Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002).

The Court finds that there are no allegations in the complaint that indicate that Defendants Dr. Ellis or Nurse Jessica were aware that Plaintiff had a medical need that they ignored. Instead, Plaintiff contends that he approached Nurse Jessica to "ask a question" and was prevented from doing so by Defendant Sgt. Blackburn [Doc. 2 p. 6]. Additionally, the first mention of Defendant Dr. Ellis' involvement in Plaintiff's medical care does not occur until September 2020 [*Id.* at 7]. Plaintiff contends that Dr. Ellis ordered blood work for Plaintiff at least three times between September 1 and September 16, 2020, and that he diagnosed Plaintiff with Hepatitis B on September 15, 2020 [*Id.* at 7-8]. Plaintiff filed the instant lawsuit the day after his latest blood draw on September 16, 2020 [*Id.* at 10]. Accordingly, Plaintiff has not alleged that Defendant Dr. Ellis knew and disregarded a risk to him prior to September 2020, and there is no evidence before the Court that he has denied Plaintiff adequate medical care by failing to order Hepatitis

12

treatment the instant the diagnosis was made. Therefore, Plaintiff has not stated a claim against Defendants Jessica and Ellis, and they are entitled to be **DISMISSED**. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

The Court finds, however, that Plaintiff's complaint contains factual allegations against Defendants Jennings, Smith-Hill, Dunn, and Blackburn that state a plausible claim for the denial/delay of constitutionally adequate medical treatment, and it will allow this case to **PROCEED** as to that sole claim against these Defendants.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set for above;

4. The Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, to the Attorney General for the State of Tennessee, and to the Court's financial deputy;

5. Plaintiff has failed to state a cognizable constitutional claim against Dr. Ellis or Nurse Jessica, and these Defendants are **DISMISSED**;

6. Plaintiff's claim for the denial and/or delay of medical care is permitted to **PROCEED** against Allen Jennings, Brittany Smith-Hill, Carolyn Dunn, and Forrest Blackburn;

13

7. The Clerk is hereby **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Jennings, Smith-Hill, Dunn, and Blackburn;

8. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this memorandum and order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Fed. R. Civ. P. 4;

9. Plaintiff is **NOTIFIED** that failure to return the completed service packets within the time required will result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

10. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default;

11. Plaintiff's remaining claims are **DISMISSED**;

12. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE